UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **RONALD LEE LEDOUX** | * | **CIVIL ACTION NO. 13-2631** |
| **VERSUS** | * | **JUDGE HAIK** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

  This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Ronald Lee LeDoux, born November 28, 1965, filed an application for a period of disability, disability insurance benefits and supplemental security income on May 20, 2011, alleging disability as of September 15, 2008, due to back pain, borderline intellectual functioning based on lack of education, and alcohol and drug abuse in remission.

## FINDINGS AND CONCLUSIONS

  After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from University Medical Center ("UMC") dated April 30, 2009 to July 12, 2010.** On July 1, 2009, claimant complained of neck and upper back pain after falling off of a roof six days prior. (Tr. 259). A thoracic spine series showed mild anterior wedging of mid-thoracic vertebral bodies with kyphosis and moderate endplate spurring greatest anteriorly. (Tr. 242). Lumbar spine x-rays showed mild lower lumbar spondylosis. (Tr. 258).

An MRI of the cervical spine dated July 16, 2009, showed posterior bulging of the C3-4 disc which minimally impressed the thecal sac. (Tr. 241). The nerve root foramina were patent. A lumbar spine MRI dated July 16, 2009, showed no significant findings. (Tr. 255).

On August 5, 2009, claimant complained of back pain not relieved by Tylenol. (Tr. 249). On examination, his strength was 5/5 in the upper and lower extremities. The assessment was back pain, for which he was prescribed Tramadol. (Tr. 250).

**(2) Records from American Legion Hospital dated March 15, 2011**. Claimant complained of head, neck, and lower back pain after a motor vehicle accident. (Tr. 282). Lumbar and cervical spine x-rays were normal. (Tr. 286-87). The impression was cervical/lumbar sprain/strain. (Tr. 283). He was prescribed Ibuprofen, Tramadol and Baclofen as needed for pain. (Tr. 290).

**(3) Records from Dr. Robert Franklin dated March 15, 2011 to June 13, 2011**. On March 28, 2011, claimant complained of severe and constant neck, upper back and low back pain, and mild to moderate and intermittent headaches. (Tr. 299). He was taking muscle relaxers and Ibuprofen. On physical examination, he mobilized antalgically, particularly from the cervical region.

On cervical exam, claimant's posture was poor. (Tr. 300). He guarded with cervical range of motion, and complained significantly of pain on range of motion and palpation. He had spasm in the left superior trapezius muscle group.

Claimant guarded on left shoulder exam. On lumbar exam, he lacked lumbar extension, and complained of pain on range of motion and palpation. Neurologically, he was intact with regard to motor, reflexes, and cranial nerves.

Dr. Franklin's impression was cervical and lumbar strain, possible underlying spinal pathology, and headaches. He recommended conservative

treatment. He prescribed Celebrex, Flexeril, and Lortab. Claimant was temporarily disabled from employment.

An MRI dated April 15, 2011, showed mild levoscoliosis of the cervical and upper thoracic spine; mild right uncinate hypertrophy at C2-3, mild right uncinate hypertrophy at C3-4, minimal diffuse annular bulges at C4-5 and C5-6, minimal narrowing of the right C3-4 foramen, and no central canal or foraminal stenosis. (Tr. 292). A lumbar MRI showed mild levoscoliosis of the lumbar spine; a small focal left foraminal disc protrusion containing an annular fissure at L3-4, minimal diffuse annular bulge with a left foraminal annular fissure at L4-5, a small focal midline disc protrusion containing an annular fissure at L5-S1, and no central or foraminal stenosis. (Tr. 293).

On April 18, 2011, claimant was minimally improved. (Tr. 298). The cervical MRI revealed underlying scoliosis, as well as multilevel degenerative changes and disc bulges. The lumbar MRI revealed disc protrusions, two disc herniations, underlying degenerative changes, annular fissures and scoliosis.

Claimant requested to be released to light duty. Dr. Franklin honored that request.

On May 16, 2011, claimant's symptoms persisted. (Tr. 297). His exam was unchanged. Dr. Franklin gave him a Lyrica trial. He stated that claimant was

temporarily disabled from employment.

On June 13, 2011, claimant continued with pain and guarded range of motion. (Tr. 296). Dr. Franklin titrated his Lyrica dose. He stated that claimant could look for light duty work.

**(4) Consultative Examination Report from Amy Cavanaugh, Ph.D., dated July 6, 2011**. Claimant alleged back problems and illiteracy. (Tr. 302). He reported that he could bathe and dress himself; swept and did other chores, but it took him a long time because of back pain, and prepared his own food using the stove and oven and described how to cook his favorite meal of chicken and gravy.

Claimant reported that he had been arrested for a DWI at age 17 and another in his 20s. (Tr. 303). He had also been arrested for distribution of marijuana in 1990. He reported no present use of substances or alcohol, but smoked half a pack of cigarettes per day. His medications included Hydrocodone and cyclobenzaprine.

On examination, claimant's speech was comprehensible, and his thought process and content were appropriate. Judgement and insight were fair to good. He described his mood as somewhat down since his accidents and chronic pain, and his affect was flat. He reported multiple academic difficulties, struggling in math, reading, and spelling.

Claimant appeared to have an adequate toleration of stress and frustration. He displayed adequate attention and concentration. (Tr. 304). His behavioral pace was adequate, with fair effort and adequate persistence.

Claimant was friendly and cooperative. His immediate, remote, and delayed memory was intact. Working memory was in the borderline range.

Dr. Cavanaugh concluded that claimant's full scale IQ score of 79 was in the borderline range of intellectual functioning; however, his score was less meaningful as an estimate of his intellectual abilities due to significant differences between his verbal comprehension (impaired range) and perceptual reasoning (average range) skills. His working memory skills were poor, and processing speed was in the low average range. His scores were consistent with his history of limited education and his primary employment in a physical laborer position.

Claimant had no history of mental illness, and appeared only to be experiencing feelings of stress related to his current circumstances and physical problems. His lack of education, intellectual limitations in the areas of working memory and verbal skills, and physical health problems presented the greatest barriers to employment, rather than any mental condition. (Tr. 304-05).

Dr. Cavanaugh opined that if claimant's medical problems could be successfully treated, then he appeared motivated to return to work in a skilled

laborer or trade job within the limitations of his physical health. (Tr. 305). His Global Assessment of Functioning ("GAF") score was 65.

**(5) Records from Dr. Mark F. McDonnell dated June 15, 2011 to January 9, 2012**. On June 15, 2011, claimant complained of neck and low back pain radiating to the thighs with headaches after an automobile accident on March 15, 2011. (Tr. 340). His medications included Celebrex, Flexeril, and Lyrica. He had had a problem with crack and Lortab 10 years prior. He smoked one pack of cigarettes per day. (Tr. 341).

Claimant was 5 feet 11 inches tall and weighed 198 pounds. He had a normal gait and level pelvis.

On examination, claimant had moderate tenderness and muscle spasm over the lower cervical paraspinals. His motor testing, reflexes, and grip were normal. He had no segmental sensory loss and no long tract signs. Range of motion was restricted 50% in extension and 25% in all other planes. He had no atrophy and good pulses.

On low back exam, claimant had severe tenderness and constant muscle spasm from L1 to S1. He had normal motor testing and an absent left ankle jerk. He had no segmental sensory loss. Range of motion was restricted 75% in extension and 50% in all other planes. He had no long tract signs. Straight leg

raising, sacroiliac testing, and femoral stretch were negative. He had no atrophy and good pulses.

Cervical spine x-rays showed good alignment and no instability. Lumbar spine x-rays showed a traction spur on the endplate of L5, a possible pars defect at L5, and lateral subluxation of L4 on L5 of 7 mm. A cervical MRI dated April 15, 2011, showed disc bulges from C3-7. Lumbar MRI showed a left foraminal disc herniation at L3-4, left bulge at L4-5, and central herniation at L5-S1, with annular fissures at all three levels.

Dr. McDonnell's impression was post-traumatic axial neck pain with disc bulges at all levels; probable facet syndrome at C5-7, post-traumatic axial low back pain with lateral instability at L4-5 and lesions from L3-S1, and tobacco use. He recommended facet injections at C5-7 and L4-S1 bilaterally.

On September 28, 2011, claimant complained of neck pain and infrequent headaches after an automobile accident on August 30, 2011. (Tr. 321). He had a normal gait.

On examination, claimant had moderate to severe tenderness and muscle spasm from C2-4. (Tr. 322). His motor testing and reflexes were normal. He had no segmental sensory loss. Range of motion was restricted about 25%. He had no atrophy, and good pedal pulses.

Cervical spine x-rays showed good alignment and 4 mm of retrolisthesis at C3-4 in extension that reduced to neutral in flexion.

Dr. McDonnell's impression was post-traumatic instability at C3-4.

On October 13, 2011, claimant complained of posterior neck pain that was worse with extension. (Tr. 332). On examination, he was motor intact. He had spasms around C4-7 bilaterally. Axial load and rotation in extension brought out the symptoms.

A cervical MRI dated October 7, 2011, showed disc bulges, especially at C4-5 and C5-6. The radiologist saw no changes compared with the April 15, 2011 MRI. Dr. McDonnell recommended injections from C4-7.

Claimant was prescribed Lortab from October 13, 2011 to January 9, 2012. (Tr. 315).

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on July 11, 2012, claimant was 45 years old. (Tr. 26). He testified that he was 5 feet 11 inches tall and weighed about 180 pounds. He had a driver's license and was able to drive.

Claimant had a seventh-grade education. He had last worked as a painter about two years prior. (Tr. 27). He had worked as a painter for 27 years. (Tr. 30).

As to complaints, claimant reported that he had two cracked discs in his back and two "messed up" discs in his neck. (Tr. 28). He stated that Dr. McDonnell had told him that he needed surgery. He said that he did not have the surgery because his lawyer told that him it would have taken all of the money from the settlement. (Tr. 29).

Claimant testified that he was taking medications which helped "a lot." (Tr. 27). He said that he had no side effects from his medications. He stated that he was not getting mental health treatment. (Tr. 27-28).

Regarding limitations, claimant testified that he could walk for about an hour. (Tr. 27). He stated that he could sit for about 20 minutes before his back started hurting and he had to move around. He said that he could stand for a couple of hours, but had to move around.

Claimant reported that he could lift 10 pounds. He stated that he could not bend down because of back pain. (Tr. 29).

As to activities, claimant testified that he did a little housework, including laundry and shopping. (Tr. 28). He said that he mainly sat down all day and watched television. (Tr. 29). He stated that he could not work because he could not bend over or read and write.

**(7) Administrative Hearing Testimony of Wendy P. Klamm, Vocational Expert ("VE")**. Ms. Klamm described claimant's past work as a painter as medium and skilled, and sheet rock installer as medium and skilled. (Tr. 34). The ALJ asked the VE to assume a claimant age 45 with seven years of education, who had the ability to perform sedentary work with limitations to alternating sitting after 20 minutes; standing two hours or walking one hour, and was limited to simple, routine, repetitive tasks. In response, Ms. Klamm stated that he could not do his past work, but could work as a parimutuel ticket checker, of which there were 970 jobs statewide and 69,730 nationally; microfilm document preparer, of which there were 1,230 jobs statewide and 97,250 nationally, and fishing reel assembler, of which there were 385 jobs statewide and 28,315 nationally. (Tr. 34-35).

When claimant's attorney added the limitations of borderline intelligence and functional illiteracy, Ms. Klamm responded that those jobs would not be affected. (Tr. 35). She confirmed that the identified jobs would require claimant's ability to perform those jobs on a regular and continuing basis for eight hours a day, five days a week.

**(8) The ALJ's Findings**. Claimant argues that the ALJ erred: (1) in failing to address his complaints of disabling pain, and (2) in finding that he could work

11

five days a week, eight hours a day.

As to the first argument, claimant has not shown that his pain was disabling. Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *Id*. (*citing Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991)).

The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. *Id*. (*citing Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir.1983)). Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. *Id*. (*citing Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)).

Here, claimant testified that he was taking medications, which helped "a lot." (Tr. 27). He said that he had no side effects from his medications. If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson*

*v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Additionally, the objective evidence does not support a finding that claimant's pain was disabling. In support of his decision, the ALJ cited the 2009 MRI showing posterior bulging of the C3-4 disc that *minimally* impressed the thecal sac and *patent* nerve root foramina (Tr. 241); the 2009 lumbar MRI demonstrating *no* significant findings (Tr. 255); the 2009 report showing *5/5 strength* in the upper and lower extremities (Tr. 249-50); the 2011 report showing *normal* lumbar and cervical spine x-rays (Tr. 286); the 2011 cervical MRI showing *mild* levoscoliosis of the cervical and upper thoracic spine, *mild* ulcinate hypertrophy, *mild* diffuse annular bulge, *minimal* diffuse annular bulges at C4-5 and C5-6, *minimal* narrowing of the right C3-4 foramen, and *no* central canal or foraminal stenosis (Tr. 292); the 2011 lumbar MRI showing *mild* levoscoliosis of the lumbar spine, *small* focal disc protrusion at L3-4, a *minimal* diffuse annular bulge at L4-5, *small* focal disc protrusion at L5-S1, and *no* central canal or foraminal stenosis (Tr. 293); Dr. Franklin's 2011 report clearing claimant for *light duty work* (Tr. 296), and Dr. McDonnell's 2011 report indicating *normal* gait and *normal* cervical spine x-rays showing *good* alignment (Tr. 321-22). (emphasis added). (Tr. 15-17). It is well established that claimant's subjective complaints

must be corroborated at least in part by objective medical testimony. *Houston v. Sullivan* 895 F.2d 1012, 1016 (5th Cir. 1989) (*citing Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir.1988)). That is not the case here.

Further, the ALJ noted that claimant could dress and bathe himself, maintain personal hygiene independently, sweep and do other chores but it took him a long time because of back pain. (Tr. 14, 27-28, 156, 302). He also observed that claimant could also prepare his own food using the stove and oven, and described how to cook his favorite meal of chicken and gravy to Dr. Cavanaugh. (Tr. 14, 302). It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status. *Leggett v. Chater*, 67 F.3d 558, 565 n. 12 (5th Cir. 1995). Thus, the ALJ's finding regarding claimant's alleged disability due to pain is entitled to deference.

Next, claimant argues that the ALJ erred in considering his credibility. [rec. doc. 8, p. 2]. The record reflects that the ALJ specifically evaluated claimant's testimony at the hearing, including his complaints of pain. (Tr. 14-15). However, he noted claimant's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible in light of the objective medical records. (Tr. 15). It is well settled that the absence of objective factors indicating the existence of severe pain -- such as limitations in the range of motion, muscular

atrophy, or impairment of general nutrition – could itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

Finally, claimant argues that the ALJ erred in finding that he could maintain work activity five days a week, eight hours a day. [rec. doc. 8, pp. 2, 4].

The ALJ found that claimant had the residual functional capacity to perform sedentary work, except that he had to alternate sitting after 20 minutes, standing two hours, walking one hour and would remain on task, and was limited to simple, routine, repetitive tasks. (Tr. 14-15). In support of this finding, he cited the objective medical records referenced above. As the records support the ALJ's RFC assessment, it is entitled to deference.

Additionally, the record reflects that despite claimant's claim of disability, he indicated in his Disability Report that he had stopped working because "business was slow and they laid me off in 2008." (Tr. 144). His brief further reflects that he continued working until 2011, which is after his alleged onset date of September 15, 2008. [rec. doc. 8, p. 1]. This discrepancy further undermines claimant's credibility. The ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Further, claimant argues that the vocational expert indicated that he could not perform the jobs she identified if he could not work five days a week, eight

15

hours a day. [rec. doc. 8, p. 3]. However, the ALJ did not adopt this finding. It is well established that the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ. *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985). Because the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or his representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

October 1, 2014, Lafayette, Louisiana.

*[signature]*

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE